No. 12,936.

H. C. LALLIER CONSTRUCTION AND ENGINEERING COMPANY
*v.* MORRISON, ADMINISTRATOR.
(25 P. [2d] 729)

Decided September 25, 1933.

Mr. CLARENCE L. IRELAND, Mr. R. H. BLACKMAN, for plaintiff in error.

Messrs. BLOUNT, SILVERSTEIN & ROSNER, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was defendant in the trial court and the parties will be hereinafter referred to as Morrison and the Lallier company.

Rufus P. Morrison brought an action against the Lallier company for an accounting and to recover his share of profits from a joint enterprise. Before issue, Rufus P. Morrison died and his son, Jack Morrison, as administrator, was substituted as party plaintiff. In July of 1926, the Lallier company entered into a contract with the Colorado state highway department, wherein the Lallier company agreed to build a federal aid project in Gunnison county, Colorado.

On July 24, 1926, the Lallier company entered into a written contract with Morrison and supplemented that contract about July, 1927, which contract and supplement are as follows:

Defendant's Exhibit 1. ''Contract and Agreement between the H. C. Lallier Construction and Engineering Co., party of the first part, and R. P. Morrison, party of the second part, both of Golden, County of Jefferson,

State of Colorado, pertaining to a working agreement on F. A. P. No. 258-D.

"The said H. C. Lallier Construction and Engineering Co. shall do the following:

"600 cubic yards—Common Structural Excavation (Dry); 10 cubic yards—Common Structural Excavation (Wet); 150 cubic yards—Dry Rock Structural Excavation; 10 cubic yards—Wet Rock Structural Excavation; 118 cubic yards—Class 'A' Concrete; 93 cubic yards—Class 'B' Concrete.

"10,100 pounds Reinforcing Steel; 1,300 lin. Feet 15" C M P Culvert; 94 Lin. Feet 18" C M P Culvert; 78 Lin. Feet 24" C M P Culvert; 36 Lin. Feet 30" C M P Culvert; 6,900 Lin. Feet Moving Wire Fences; 810 Lin. Feet Snow Fence; 10 Structures to Remove.

"Said R. P. Morrison shall do the following: Clearing and Grubbing

"15,000 cubic yards—Common Excavation; 5,000 cubic yards—Rock Excavation; 1,500 cubic yards—Borrow Excavation; 33,000 square yards—Overhaul on Grading.

"Said R. P. Morrison shall do the above items with his stock, wagons, fresnos, implements and etc., without rent thereon, except the shipping expense to and from the job, with allowance for necessary repairs.

"Said R. P. Morrison will superintend the job in a general way in conjunction with said H. C. Lallier in getting out the gravel surfacing amounting to 8,970 cubic yards with 26,100 Y. M. Overhaul on same, for which the H. C. Lallier Construction & Engineering Co. will furnish a screening plant, crusher and the power for operation same, without any rent thereon. Only the freight both ways and the necessary repairs shall be charged to the job.

"It is hereby understood and agreed that all materials, labor, food, hay and grain, repairs, freight and everything else pertinent to said project, shall be obtained by both parties at the most favorable prices. Both parties are to furnish bills in detail of the above items, and same

shall be charged against the job. Also, the Surety Bond shall be charged to the job.

"It is further agreed that neither H. C. Lallier nor R. P. Morrison shall be entitled to any salary for their respective duties on this work, but shall work in harmony and accord with each other, with the view of driving the job through to completion, so that a profit may be derived from the work.

"Said H. C. Lallier hereby agrees to advance from time to time the necessary funds for labor, materials, repairs, and so forth, pertinent to the job, which are to be refunded from the estimates realized on the work.

"After all outstanding bills have been taken care of, and the books brought up to date, the net profits shown are to be equally divided between said H. C. Lallier and R. P. Morrison, each to receive fifty (50) per cent thereof.

"The books pertinent to said job are to be kept and audited by Jerry Aymer.

"We hereby affix our seals and signature this the 24th day of July, 1926.

> "The H. C. Lallier Construction & Eng. Co.,
> "By H. C. Lallier, President.
>> "Party of the First Part, and
> "R. P. Morrison,
>> "Party of the Second Part."

Defendant's Exhibit 2.

"Supplemental Agreement to general contract between The H. C. Lallier Construction & Engineering Co. and R. P. Morrison on F. A. P. No. 258-D.

"Lallier Co. agrees to furnish 3 Mack trucks up to June 27, 1927, and two Mack trucks from June 27, to completion of job, without charge. Joint interests shall pay for gas, oil, repairs and truck drivers. The Company shall furnish Rene Lallier to look after crusher interest and superintend same, to work in conjunction with Morrison and the expense thereof will be borne by the Company.

"Morrison to furnish all teams, team equipment up to and including this date and for the completion of the job without any charge for his personal services and without charge for his teams or self for all work on 258-D. All groceries, team feed and repairs and labor hire to be borne by joint interests.

"Lallier Co. to buy as representative of joint interests crusher equipment as needed in the joint name of Morrison and Lallier for crushing and assembling plants, the expense to be paid from proceeds of the job and when completed either will have privilege of buying outfit at 25% depreciation.

"The H. C. Lallier Construction Co.,
"By H. C. Lallier, President.
"R. P. Morrison."

Morrison began work under said contract and the Lallier company advanced money to Morrison under the contract and the job was completed and accepted by the state highway department December, 1927, and Morrison filed this action January, 1929.

The allegations of Morrison's complaint generally were that he had performed each and all the obligations under the two contracts and was entitled to fifty per cent of the profits realized from the performance of said contracts and that the Lallier company had failed, after demand to pay said fifty per cent, and refused to make an accounting to Morrison and that the state had paid the Lallier company $61,064.90, and prayed for an accounting by the Lallier company to Morrison.

The Lallier company answered admitting the contracts; the payment of $61,064.90 from the state; denied that Morrison performed all his obligations under the contracts; denied a refusal to account to Morrison and alleged that the Lallier company was unable to definitely fix profits, if any, from the enterprise without a true statement or an accounting of monies paid out by Morrison, and alleged that Morrison had never made such accounting; and for further answer alleged that under

the terms of the said contracts, the Lallier company had advanced and paid out $58,876.28, the greater portion of which was paid pursuant to statements rendered to the Lallier company by Morrison and that since, the Lallier company discovered that said statements falsely represented the monies expended and expenses incurred by Morrison on the enterprise; that Morrison padded the payrolls; that the Lallier company issued its checks to said employes to cover said payrolls; that Morrison forged or caused to be forged the name of employes on said checks for the purpose of endorsement and converted funds therefrom to his own use and in turn issued his own check for a lesser amount to said employes, and further sets out other alleged irregularities on the part of Morrison and a failure to properly conduct himself in giving the required attention as superintendent of the work and wasted money thereby, and further that the Lallier company had rendered a true accounting to Morrison for the entire job, but that Morrison has refused to render a like accounting to the Lallier company and concludes with the allegation that Morrison does not come into court with clean hands and is therefore not entitled to an accounting on account of the facts above set out.

After replication was filed, Morrison, the plaintiff, moved the court for an appointment of a referee with authority to take testimony of all witnesses for both parties as provided by law, and as ground for said motion alleged that the pleadings disclosed a necessity of the examination of long accounts of both parties.

The motion for appointment of a referee was heard, and after argument by counsel, the court, on June 3, 1929, sustained said motion and appointed Charles J. Kelly of Denver, Colorado, and granted him all the authority as such referee, provided for by chapter XVI of the Code of Civil Procedure of the Compiled Laws of Colorado, 1921.

After hearings, the referee submitted his findings and report, and over the objections of the Lallier company,

the court entered judgment and decree in favor of Morrison and against the Lallier company for the principal sum and interest aggregating $3,495.75, to which judgment the Lallier company assigns error.

In resisting the motion for appointment of the referee, the Lallier company contended that a reference would be premature and that Morrison was not entitled to an accounting because, under the contracts, he, Morrison, was required to account to Lallier which he had not properly done. Soon thereafter, hearings, which extended from time to time over a period of about one year, were begun before the referee at the beginning of which the Lallier company excepted to the taking of testimony before the referee for the reason that the Lallier company was not obliged to render an accounting until Morrison had properly accounted to it.

The assignments of error numbered three and four, to which we will give our first attention, are as follows:

"3. The Court erred in granting the motion for an order appointing a referee before or until Defendant in Error had rendered an accounting affecting the matters complained of in Plaintiff in Error's answer.

"4. The Court erred in failing and refusing to rule at the hearing on Defendant in Error's motion for appointing a referee, that Plaintiff in Error was not required to render an accounting to Plaintiff [Defendant] in Error until Defendant in Error had fully accounted to Plaintiff in Error for all monies by Defendant in Error expended, pursuant to the terms of the contract and contracts set forth in Defendant in Error's complaint."

Section 224 of the Code of Civil Procedure, under which application for appointment of referee in this case was made, is as follows:

"When the parties do not consent thereto, the court may, upon the application of either, or upon its own motion, direct a reference in the following cases:

"First—When the trial of an issue of fact requires the examination of any long account on either side, in

which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein.

"Second—When the taking of an account is necessary for the information of the court to assess damages before judgment, or for carrying a judgment or order into effect.

"Third—When a question of fact, other than that upon the pleadings, arises upon motion or otherwise in any stage of the action; or,

"Fourth—When it is necessary for the information of the court in a special proceeding."

A contract between the parties was established by the pleadings, which disclosed that some calculations were necessary to determine the final interests of the parties.

The question raised here and contended for by the plaintiff in error, namely, that the court should have determined first whether Morrison was entitled to an accounting before he had made an accounting to the Lallier company, was a specific question upon which the referee could make findings and report, as well as decide the whole issue, by the order of court giving him all the authority under the Code. An interlocutory order that either side is or is not entitled to an accounting should not be, and is not, a condition precedent to a reference. One thing, among others, that is necessary to set the Code provision for reference in operation is an issue of fact requiring an examination of a long account. Had it not been desired that courts be relieved in such cases and that legal proceedings be simplified, the reference provision of the Code would not be in existence. In cases like the one at bar, where one or both of the parties refuses to account, an action for accounting by either party is proper, and both parties may then avail themselves of the opportunity to bring forth all disputed items for adjudication, and while the entire matter is in the hands of the court, complete justice should be done, and if so

no prejudice to the rights of either party would result therefrom.

██ We are unable to see whereby the Lallier company was compelled by an accounting, to alter its position for the worse, since it was enabled to obtain, in reverse order, what it complained of not being able to get from Morrison.

The trial court properly exercised its right, without the taking of testimony, in entering an order for reference on the pleadings in this case and in denial of the plea in bar.

As in the case before us, where all matters were fully heard by the referee and no substantial prejudice resulted therefrom, then the claim for premature reference should not be recognized as a successful assignment of error.

██ The contention of counsel for the Lallier company that Morrison did not come into court with clean hands and is therefore not entitled to an accounting is without sufficient merit to be entertained. The Lallier company was in a position to be made whole in this proceeding on account of the misconduct, if any, of Morrison, by deduction of any amount shown to have been suffered as loss thereby, this was considered and done by the referee. This contention is not reconcilable with the statement of counsel in their brief that "We do not contend that Morrison is not entitled to any of the profits, if there are any, from this job."

The unclean hands doctrine has broad application, but also accompanying limitations, and in this case if there was fraud or misconduct on the part of Morrison, without depriving the Lallier company of its underlying rights or causing it to suffer injury, then it is not available as a defense.

There are many other assignments of error running generally to the insufficiency of the evidence to support the finding of the referee concerning certain items of dispute.

The referee is a learned, disinterested attorney, who examined many exhibits on both sides and heard lengthy testimony produced by each party on these matters, and afterwards in a painstaking way prepared and submitted elaborate findings in which he determined the interests of both parties from disputed facts, and which after hearing objections, met the approval of the court, and from an examination of the entire record we find ample evidence to support the findings, and in this, as in all other like cases, such findings will not be disturbed.

Judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BUTLER concur.